UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-341-GWU

GLENDA S. WATKINS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

06-341    Watkins

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Glenda S. Watkins, was found by an administrative law judge (ALJ) to have "severe" impairments consisting of degenerative joint disease (DJD) and non-insulin dependent diabetes mellitus.  (Tr. 15).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Watkins retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 17-19).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of "medium" level exertion, and needed to avoid all work involving hazards and climbing of ladders.  (Tr. 488).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 488-9).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Watkins alleged disability beginning July 23, 2003 due to fibromyalgia, migraines, severe back pain, and nerve problems. (Tr. 61). She admitted that she had stopped working because the store where she was employed closed. (Tr. 62, 268, 279). She described fibromyalgia as her worst problem, saying that it prevented her from sitting or standing for very long. (Tr. 476). She also had a separate problem involving low back pain and her sacroiliac joint. (Tr. 479, 485). She described lifelong headaches which were occurring an average of once a week (Tr. 478), depression "sometimes," although she did not have any specific treatment other than medication from her family physician (Tr. 482-3), occasional vertigo, and diabetes, for which she only took medication when she had a "spell" (Tr. 483).

Most of the plaintiff's medical evidence predates her alleged onset date by years, but she was examined by a neurologist in February, 2001 for a history of headaches for the previous "30 years." (Tr. 140). The examination showed no physical or neurological abnormalities, and the physician, Dr. John O'Connell, planned to obtain further testing, but there is no evidence that it was carried out. (Tr. 140-1). Mrs. Watkins was hospitalized late in 2001 for abdominal problems, which were eventually determined to be at least partially the results of hemorrhoids and

possible gallbladder disease, and her gallbladder was removed.  (Tr. 142-3, 146, 200).  Other complaints at the same time were elevated blood pressure and glucose and headaches.  A normal MRI of the cervical and lumbosacral spine was obtained in February, 2001.  (Tr. 250).  In July, 2003, at approximately the time she stopped working, Mrs. Watkins was evaluated for abdominal pain and feelings of fever, chills, sweating, and weakness.  (Tr. 260).  A CT scan of the abdomen was normal, but her glucose level was elevated; nevertheless, her treating family physician, Dr. Steven Morgan, diagnosed abdominal pain of unknown etiology and unstable diabetes mellitus and indicated that she could follow a standard diet and "standard activities."  (Tr. 259).

A consultative physical examination was conducted by Dr. Monte Edward Martin on August 6, 2004.  (Tr. 268).  Mrs. Watkins described chronic back problems and stated that Dr. Morgan had told her she might have a pinched nerve, but she admitted that her previous MRIs of the neck, back, and head were normal.  (Id.).  She had also been given a diagnosis of fibromyalgia, but could not afford any testing.  (Id.).  Interestingly, she denied headaches, pain or stiffness in the neck, and any psychological issues to Dr. Martin.  (Tr. 269).  His examination showed a normal blood pressure, a non-tender abdomen, a normal gait, no tenderness in the lumbar area, a normal range of motion, strength, and reflexes.  (Tr. 270).  He found no evidence for any physical limitations.  (Tr. 271).

Three days later, Dr. Morgan admitted Mrs. Watkins to the Pineville Community Hospital for complaints of severe, progressive low back pain which she ascribed to the unusual positions that she had been put in for the examination by Dr. Martin. (Tr. 273). Dr. Morgan asserted on admission that Mrs. Watkins had "known DJD and probably has DDD" (degenerative disc disease) by x-ray but a new lumbosacral spine x-ray was reported to be normal. (Tr. 272, 273). His physical examination did show evidence of spasm and tenderness in the low back, however. (Id.). The final diagnosis was acute lumbago, lumbar degenerative disc disease, and "remote lumbar discectomy." (Tr. 272). There is no other indication in the transcript of a lumbar discectomy, however. Dr. Morgan discharged his patient home with indications that she could perform "prudent progressive activities." (Id.).

Dr. Morgan wrote an undated letter stating that he did not consider Mrs. Watkins capable of gainful employment due to "intractable migraines," intolerance for stress, fibromyalgia, and chronic back disease related to DJD and DDD. (Tr. 469). He added that her lumbar and cervical testing in 2004 were interpreted as normal, but did not feel that they reflected her DDD. (Id.).

The ALJ rejected Dr. Morgan's opinion due to the lack of supporting evidence, a conclusion that is well supported by substantial evidence. None of the x-rays or MRIs showed any evidence of abnormality to confirm a diagnosis of disc disease. None of the physical examinations showed evidence of the tender points commonly

used to diagnose fibromyalgia.  See Rogers v. Commissioner of Social Security, No. 05-4369 (6th Cir. May 24, 2007), slip. op. at 7-8.  The allegation of migraines is called into question at least to a certain extent by the plaintiff's statements that this had been a problem since childhood (Tr. 141, 477), yet she was able to work despite the problem until her employer closed, and subsequently denied having headaches to Dr. Martin.  Therefore, the ALJ did have reasonable grounds for concluding that this was not a debilitating problem.

Regarding the plaintiff's allegations of depression and anxiety attacks, she indicated that she had never had treatment since a brief period in the early 1990s after losing a baby.  (Tr. 482).  She also testified that Dr. Morgan had prescribed Prozac but she had stopped taking it because it "made her not feel anything."  (Id.).

Phil Pack, a licensed psychological practitioner, examined Mrs. Watkins on August 27, 2004, and commented that her complaint of "nerves" seemed to be a mixture of anxiety symptoms.  (Tr. 278).  Dr. Morgan had prescribed Zoloft, but she would only take it "now and then" when her nerves were bad.  (Tr. 279).  Her daily activities included doing shopping, cooking, and cleaning when she felt able, keeping up with money, mail, bills, and a bank account, talking to friends, reading, and doing puzzles.  (Tr. 280).  Mr. Pack diagnosed an anxiety disorder and concluded that Mrs. Watkins would have a "more than satisfactory" ability to understand, remember, and

follow instructions, sustain attention to perform repetitive tasks, adapt to pressures of day-to-day work activity.  (Tr. 282).

State agency psychologists who reviewed the evidence concluded that the plaintiff did not have a "severe" mental impairment (Tr. 346, 362), a conclusion which the ALJ adopted.  The plaintiff alleges on appeal that the ALJ erroneously failed to cite mental restrictions to the VE, but the evidence supports the ALJ's finding that the plaintiff's mental condition would not have produced functional restrictions.

The plaintiff's other argument is that the ALJ failed to cite specific reasons for finding Mrs. Watkins' testimony to be not credible.  However, a review of the hearing decision shows that the ALJ pointed out numerous inconsistencies between the plaintiff's allegations of disabling conditions and the lack of objective findings, as well as inconsistencies in some of her statements.  (Tr. 15-16).  The ALJ also noted that the plaintiff was not taking her nerve medication consistently, and was not seeking mental health treatment.  (Id.).

The decision will be affirmed.

This the 30th day of May, 2007.



Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**